## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHN THODOS, PEGGY THODOS, and THE
PEGGY A. THODOS 2014 IRREVOCABLE
TRUST,

      Plaintiffs,

      v.

TRISTATE CAPITAL BANK,

      Defendant.

Case No. 24 CV 4322

Hon. Georgia N. Alexakis

## MEMORANDUM OPINION AND ORDER

Plaintiffs John and Peggy Thodos allege that their financial advisor fraudulently obtained a loan agreement providing for a $4.7-million revolving line of credit with TriState Capital Bank. The loan was secured by the Peggy A. Thodos 2014 Irrevocable Trust. When TriState directed the trust's custodian to remove $3.5 million as repayment for money borrowed under the agreement, John, Peggy, and the trust brought suit against TriState, alleging: (1) financial exploitation of the elderly under Illinois law, 720 ILCS 5/17-56, (2) common-law fraud, (3) conversion, and (4) unjust enrichment. For the following reasons, the Court grants in part and denies in part TriState's motion to dismiss. [5].

### LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only

contain factual allegations that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, a court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

For purposes of TriState's motion to dismiss, the Court accepts as true plaintiffs' allegations in their first amended complaint. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). John and Peggy Thodos are Florida residents over the age of 60 who used the investment management services of LPL Financial, LLC. [3] ¶¶ 3, 9, 47. Richard Ceffalio was their main point of contact at LPL Financial. *Id.* ¶ 10.

According to plaintiffs, Ceffalio "engaged in a series of financial market trades whereupon he redirected profits and losses amongst various customers of LPL

2

Financial without the customer's knowledge or consent." *Id.* ¶ 15. Among these transactions, they say Ceffalio fraudulently procured a $4.7-million revolving line of credit with TriState which was secured by the Peggy A. Thodos 2014 Irrevocable Trust.[1] *Id.* ¶¶ 16, 28. Peggy and Alexis Thodos are beneficiaries of the trust. *Id.* ¶ 47.

Plaintiffs have attached to their first amended complaint an agreement, titled "Credit, Pledge and Security Agreement" ("CPSA"), that purports to formalize this transaction. [3-1] at 1. The CPSA structured the loan as a "demand loan," meaning that TriState could—at any time and in its sole discretion—demand payment of the outstanding loan amount. *Id.* at 4. The first page of the CPSA lists John and Peggy Thodos as borrowers, the trust as pledgor, and TriState as lender. *Id.* at 1. Although their signatures appear on the final pages, *id.* at 21, 23–24, John and Peggy Thodos maintain that these signatures were forged and that they were not even present in Illinois when the document was purportedly notarized in Cook County, [3] ¶¶ 25–26.

In addition to the CPSA, plaintiffs also attach a "Collateral Control Agreement" between TriState, the trust, and LPL Financial. [3-1] at 29. Under the agreement, LPL Financial agreed to hold the collateral and deliver funds to TriState when requested. *Id.* at 30–31 ¶ 8. Plaintiffs contend that they never consented to using the trust as collateral for any loan with TriState. [3] ¶ 21.

Plaintiffs maintain that, although funds were withdrawn under the loan's revolving line of credit, those proceeds benefited a different trust controlled by an

---

[1] The trust is an Illinois trust. [3] ¶ 3. John and Peggy Thodos are citizens of Florida, while TriState is a citizen of Pennsylvania. *Id.* Because there is complete diversity among the parties and the amount-in-controversy exceeds $75,000, *id.* ¶ 4, jurisdiction is proper pursuant to 28 U.S.C. § 1332(a).

individual named Daniel Schuld. *Id.* ¶ 17. They say TriState's documents show that TriState deposited proceeds from the loan into an account that did not belong to plaintiffs. *Id.* ¶¶ 19–20. Plaintiffs further allege that, even though they never received any loan proceeds, LPL Financial deducted more than $3.5 million from the trust to repay the loan's balance to TriState. *Id.* ¶¶ 49–50, 56.

On May 27, 2024, John and Peggy Thodos and the trust filed suit against TriState. [1]. A week later, they filed an amended complaint bringing claims for (1) financial exploitation of the elderly under Illinois law, 720 ILCS 5/17-56, (2) fraud, (3) conversion, and (4) unjust enrichment. [3]. They also seek a declaratory judgment that the CPSA is "null and void." *Id.* at 12. Now before the Court is TriState's motion to dismiss plaintiffs' amended complaint. [5].

## DISCUSSION

To begin, the parties do not agree whether Illinois or Pennsylvania law applies to the substantive questions at issue in this case. [17] at 3–5; [25] at 3. Plaintiffs maintain that Illinois law should apply under the *Erie* doctrine, [17] at 3–4, while TriState suggests in its opening brief that Pennsylvania law applies because the CPSA selected Pennsylvania law in its choice-of-law provision, [6] at 9 n.7. TriState maintains in the alternative that even if Illinois law does apply, plaintiffs still have not stated a claim for relief. [25] at 3, 6; [6] at 9 n.7, 11 n.8, 13, 14 n.9.

A contract with a forged signature "is by the common law absolutely void." *FirstMerit Bank, N.A. v. 2200 N. Ashland, LLC*, No. 12 C 572, 2014 WL 6065817, at *9 (N.D. Ill. Nov. 13, 2014) (quoting *Kruger v. Dorr*, 22 Ill. App. 2d 513, 527 (2d Dist. 1959)). And here, the gravamen of plaintiffs' complaint is that their signatures on the

4

CPSA were forged. The Court cannot apply the choice-of-law provision from an allegedly invalid contract. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) (Illinois respects contract's choice-of-law provision only if "the contract is valid"). The Court therefore reverts to the traditional rule that a federal court sitting in diversity applies the substantive law of the state in which it sits: here, Illinois. *See Hahn v. Walsh*, 762 F.3d 617, 629 (7th Cir. 2014) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)).

TriState has moved to dismiss all four of plaintiffs' claims. The Court considers each in turn.

### A. Illinois Elder Abuse Statute (Count I)

Plaintiffs allege that TriState violated Illinois' elder abuse statute, which provides:

> (a) A person commits financial exploitation of an elderly person … when he or she stands in a position of trust or confidence with the elderly person … and he or she knowingly:
>
> > (1) by deception or intimidation obtains control over the property of an elderly person …; or
> >
> > (2) illegally uses the assets or resources of an elderly person ….

720 ILCS 5/17-56. Under the statute, a person stands in a "position of trust and confidence with an elderly person" when he or she:

> (i) is a parent, spouse, adult child or other relative by blood or marriage of the elderly person …, (ii) is a joint tenant or tenant in common with the elderly person …, (iii) has a legal or fiduciary relationship with the elderly person …, (iv) is a financial planning or investment professional, (v) is a paid or unpaid caregiver for the elderly person …, or (vi) is a friend or acquaintance in a position of trust.

720 ILCS 5/17-56(c). Plaintiffs' allegations under the statute sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading requirements. *See Est. of Rivers by Rivers v. Citibank Corp.*, No. 22 C 6729, 2023 WL 5830792, at *2 (N.D. Ill. Sept. 8, 2023) (applying Rule 9(b) to claim under Illinois elder abuse statute); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (under Rule 9(b), complaint must provide "the who, what, when, where, and how" of the alleged fraud).

Plaintiffs do not allege that TriState itself stands in a "position of trust" to be directly liable under 720 ILCS 5/17-56. For example, they do not allege that TriState "has a legal or fiduciary relationship" with them or that TriState qualifies as a "financial planning or investment professional." 720 ILCS 5/17-56(c)(iii)–(iv). Indeed, plaintiffs admit they had no contact at all with TriState. [3] ¶ 18. Plaintiffs instead allege that it was LPL Financial's Ceffalio who interacted with the bank to carry out the alleged fraud. *Id.* Plaintiffs describe Ceffalio as their "trusted financial advisor," *id.* ¶ 7, meaning that it was *Ceffalio* who stood in a "position of trust" with John and Peggy. *See* 720 ILCS 5/17-56(c)(iv) (a person stands in a position of trust under the statute if he is a "financial planning or investment professional").

But plaintiffs have not named Ceffalio as a defendant. Therefore, for TriState (the only named defendant) to be liable for Ceffalio's conduct, plaintiffs must adequately allege that Ceffalio acted as TriState's agent. *See Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9 (2004) ("[A] principal is liable for the acts of his agent performed

within the scope of the agency.") (quoting *Gomien v. Wear–Ever Aluminum, Inc.*, 50 Ill.2d 19, 21 (1971)).

In Illinois, "[t]he test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 640 (7th Cir. 2021) (quoting *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998)). Here, plaintiffs plainly allege that "Ceffalio was also an agent for TriState." [3] ¶ 11; *id.* ¶¶ 18, 22, 31, 43, 55. But they do not support this legal conclusion with any facts suggesting the requirements for an agency relationship have been met. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *see also Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 498 (1996) ("It is insufficient to merely plead the legal conclusion of agency.") (citing *Knapp v. Hill*, 276 Ill. App. 3d 376, 382 (1st Dist. 1995)). For example, plaintiffs do not allege that TriState, as principal, exercised control over Ceffalio's work or that TriState and Ceffalio (or LPL Financial) agreed that Ceffalio would act on TriState's behalf. In opposing TriState's motion to dismiss, plaintiffs suggest that TriState must have known Ceffalio was acting as its agent because he "was bringing Tristate millions of dollars of business." [17] at 7. But this allegation does not appear in the complaint itself, and even if it did, the mere fact that Ceffalio brought business to TriState does not mean that TriState controlled Ceffalio in the manner required for an agency relationship. *See Sosa*, 8 F.4th at 640.

7

Thus, even viewing the facts in the light most favorable to plaintiffs, a barebones allegation that Ceffalio worked as TriState's agent does not suffice, and Count I is dismissed without prejudice.[2]

## B. Common Law Fraud (Count II)

Plaintiffs next claim that TriState is liable for common-law fraud based on the CPSA's alleged forged signatures. To state a claim in Illinois for common-law fraud, a plaintiff must plead: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Id.* (quoting *Connick*, 174 Ill.2d at 496). As with Count I, plaintiffs' Count II fraud claim is subject to Rule 9(b)'s heightened pleading requirement. *See Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018).

Plaintiffs allege that TriState committed common-law fraud based on the affixing of their forged signatures to the CPSA. [3] ¶ 54. However, plaintiffs never allege that *TriState* forged their signatures. Instead, they say that the agreement was "orchestrated by Tri-State's agent"—Ceffalio. *Id.* ¶ 55; *see also id.* ¶ 7 (stating only that TriState "relied upon the forged document" to remove funds from plaintiffs'

---

[2] In their opening memo, TriState asks the Court to consider various exhibits it attaches to its memo purporting to establish that Ceffalio has never been a registered broker or investment advisor with TriState. [6] at 3 n.2, 9–10. Because plaintiffs have failed to sufficiently plead the existence of an agency relationship between Ceffalio and TriState, the Court neither needs to review these materials nor consider plaintiffs' argument that the existence of an agency relationship is a factual question "not ripe" for resolution on a motion to dismiss. *See* [17] at 6. The Court also need not consider TriState's additional argument that the Illinois elder abuse statute does not have extraterritorial effect.

accounts). For the same reasons discussed in Count I, plaintiffs have not adequately alleged an agency relationship between Ceffalio and TriState that could impute liability to TriState for Ceffalio's alleged forgery.

Plaintiffs separately argue that TriState made a material misrepresentation when it demanded payment from plaintiffs' account knowing the demand was based on the fraudulent CPSA. [17] at 9. Even assuming TriState knew the CPSA bore forged signatures, TriState's demand on a void contract does not constitute a false *statement* of material fact. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 671 (7th Cir. 2001) (asserting a legal right over collateral does not constitute a representation of a material fact, even if the legal right is erroneously asserted). Furthermore, plaintiffs have failed to plead fraud by TriState with particularity. *See Borsellino*, 477 F.3d at 507 (plaintiffs must plead the "who, what, when, where, and how" of the fraud). Nor is it clear how plaintiffs could have relied on a false statement from TriState to their detriment when they admit that they never communicated with the bank and, as already discussed, they have failed to sufficiently plead an agency relationship between Ceffalio and the bank. *See* [17] at 7; *see also* [3] ¶ 18.

Count II is therefore dismissed without prejudice.

## C. Conversion (Count III)

To state a claim for conversion, a plaintiff must allege: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a

demand for possession of the property." *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 827 (7th Cir. 2018) (quoting *Gen. Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 886 (1st Dist. 1990)). TriState advances three specific arguments in seeking to dismiss plaintiffs' conversion claim, but each lacks merit.

TriState first argues that it had "lawful justification" to obtain funds from the trust to repay the outstanding balance on the loan. [6] at 12–13. In support, it cites a provision of the Uniform Commercial Code ("UCC") that, according to TriState, "grants a lender the right to demand payment on a demand loan at any time." 810 ILCS 5/3-104(a). A problem with this argument, however, is that it relies on the validity of the CPSA, which, as discussed, plaintiffs maintain is invalid because of their allegedly forged signatures. *See* [3] at 12 (seeking a declaratory judgment that the CPSA is "null and void"); *see also FirstMerit Bank*, 2014 WL 6065817, at *9 (a contract with a forged signature "is by the common law absolutely void"). TriState therefore cannot base its "lawful justification" on the CPSA. *Cf.* 810 ILCS 5/3-420 (under UCC, an instrument is converted where "bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment").

TriState next argues that the "economic loss" doctrine bars plaintiffs' conversion claim. [6] at 13–14. The "economic loss" doctrine—known as the *Moorman* doctrine in Illinois—"bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). "*Moorman* dictates that, when a contract sets out the duties

10

between the parties, recovery should be limited to contract damages, even though recovery in tort would otherwise be available under the common law." *ACW Flex Pack LLC v. Wrobel*, No. 22-CV-6858, 2023 WL 4762596, at *12 (N.D. Ill. July 26, 2023) (quoting *R.J. O'Brien & Assocs., Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002)). Here, however, plaintiffs allege that they had no contractual relationship with TriState. *See* [3] ¶¶ 6, 25–26; *id.* at 12. Because there is no contract, the tort of conversion is available to plaintiffs. *Cf. ACW Flex Pack*, 2023 WL 4762596, at *13 ("[I]f a plaintiff claims that a defendant breached an obligation other than a contractual obligation, the *Moorman* doctrine does not apply.") (quoting *Toll Processing*, 880 F.3d at 827).

Relatedly, TriState argues that a conversion claim cannot be premised on an asserted right to money. [25] at 8–9 & n.3 (first citing *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002); then citing *GC Am. Inc. v. Hood*, No. 20-CV-03045, 2022 WL 910556, at *8 (N.D. Ill. Mar. 29, 2022); and then citing *McNichols v. Weiss*, No. 18 C 2125, 2018 WL 5778413, at *7 (N.D. Ill. Nov. 2, 2018)). This is an overstatement of the relevant legal principles. Although a conversion claim cannot be based on a defendant's "mere obligation to pay money," money still "may be the subject of conversion." *In re Thebus*, 108 Ill. 2d 255, 260 (1985). "In order for money to be the proper subject of a conversion action, it must be capable of being described as a 'specific chattel.'" *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989). To be considered "specific chattel," the "plaintiff must have a 'right to a specific fund or specific money in coin or bills.'" *Id.* (quoting *Mid-Am. Fire & Marine Ins. Co. v.*

11

*Middleton*, 127 Ill. App. 3d 887, 892 (4th Dist. 1984)). Moreover, to state a claim for conversion of money, "the plaintiff's right to the money must be absolute." *Horbach*, 288 F.3d at 978. In other words, "[i]t must be shown that the money claimed, or its equivalent, *at all times* belonged to the plaintiff and that the defendant converted it to his own use." *Id.* (quoting *Thebus*, 108 Ill. 2d at 261).

Here, TriState does not argue that the allegedly converted money did not constitute "specific chattel." And plaintiffs do not assert that TriState owes it money due to a "general debt or obligation." *Thebus*, 108 Ill. 2d at 261. Instead, plaintiffs assert that TriState converted funds from a trust from which it never had a right to collect because the underlying loan agreement was fraudulent. *See* [3] ¶ 63 (alleging that the trust had "an absolute and unconditional right to the immediate possession of the $3,530,379.93 deducted from its account at LPL by TriState"). Unlike other failed conversion claims, plaintiffs have adequately alleged that they had an absolute and unconditional right to the trust at all times. *Contra McNichols*, 2018 WL 5778413, at *7 (no absolute right to possession because defendant rightfully possessed the funds for certain period under delineated repayment schedule); *Horbach*, 288 F.3d at 978 (no absolute right to possession where plaintiff's agreement with defendants obligated him to pay defendants).

TriState separately argues that Pennsylvania's "gist of the action" doctrine bars plaintiffs' conversion claim, but even assuming Pennsylvania law applied at this juncture, that doctrine is essentially the same as Illinois' "economic loss" doctrine. It bars a plaintiff from bringing a claim in tort when the "gist or gravamen of the cause

of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." *See Bruno v. Erie Ins. Co.*, 630 Pa. 79, 87 (2014). Thus, even if the doctrine did apply, TriState would encounter the same problem that bars the economic loss doctrine: according to plaintiffs' allegations, no underlying contractual agreement exists.

For these reasons, TriState's motion to dismiss plaintiffs' Count III conversion claim is denied.

### D. Unjust Enrichment (Count IV)

To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment and that [the] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022). TriState argues the plaintiffs' unjust enrichment claim should be dismissed for three reasons, none of which are persuasive.

First, according to TriState, plaintiffs cannot allege it would be "unjust" for the bank to retain the money it collected from the trust because it "had the express right under the CPSA and the UCC to demand payment on the Loan at any time and the right to instruct LPL to transmit funds from the Brokerage Account to pay the balance." [6] at 14. But, once again, whether TriState's collection on the loan was justified depends on whether there was a valid contract between the parties. Moreover, TriState does not attempt to argue that, in the case of a fraudulent loan agreement, the victim of the fraud (as opposed to the bank acting on a fraudulent

13

agreement) should bear the loss. *Cf.* 810 ILCS 5/3-401 (under UCC, a "person is not liable on an instrument unless … the person signed the instrument"); *id.* at 5/4-401(a) (under UCC, a bank may only charge against the account of a customer if the item is "authorized by the customer").

Second, TriState argues that the doctrine of unjust enrichment "is inapplicable when the relationship between the parties is founded upon a written agreement or express contract." *Id.* at 15 (quoting *West Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F. Supp. 3d 211, 224 (E.D. Pa. 2017)). This argument fails for the same reason—at this stage in the litigation, the Court accepts as true that no valid contract existed between plaintiffs and TriState.

Third, TriState argues that the unjust enrichment claim fails because plaintiffs do not "plausibly allege that they personally conferred any benefits to TriState." [6] at 14. In support, they cite a case from the Eastern District of Pennsylvania in which the court dismissed an unjust enrichment claim premised on the misappropriation of plaintiff's likeness. *Id.* at 15 (citing *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 382 (E.D. Pa. 2020)). There, the court held that, because plaintiff alleged the defendant "misappropriated his likeness without his permission," plaintiff could not have directly "conferred anything" on defendant. *Pellegrino*, 451 F. Supp. 3d at 382. Under this reasoning, TriState says there can be no unjust enrichment because it was LPL Financial, not plaintiffs, who ultimately transferred the funds from the trust to TriState.

14

Even if *Pellegrino* were an accurate recitation of Pennsylvania law, TriState has offered no authority suggesting that the same proposition applies in Illinois. To the contrary, the standard in Illinois is only that "the defendant has unjustly retained a benefit to the plaintiff's detriment and that [the] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gociman*, 41 F.4th at 886. This standard does not suggest that plaintiffs must voluntarily confer a benefit upon TriState. It is enough at this stage for plaintiffs to plead that TriState unjustly benefited from the CPSA and that plaintiffs lost money as a result.

For these reasons, the Court denies TriState's motion to dismiss Count IV.

## CONCLUSION

For the reasons discussed, TriState's motion to dismiss [5] is granted in part and denied in part. The Court dismisses Counts I and II without prejudice and denies the motion as to Counts III and IV.

The Court grants plaintiffs leave to file a second amended complaint on or before 4/16/25 if they can cure the deficiencies with Counts I and II while still complying with their Rule 11 obligations. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). If plaintiffs elect not to file a second amended complaint by 4/16/25, the dismissal of those claims will convert to a dismissal with prejudice.

The parties are directed to appear for a status hearing on 5/1/25 at 9:30 a.m. By 4/23/25, the parties are directed to submit a joint status report with proposed next

steps in this matter, including a joint proposed discovery plan and their interest in a settlement conference.

_____
Georgia N. Alexakis
United States District Judge

Date: 3/17/25