**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Peggy A. Thodos 2014 Irrevocable Trust, | ) | |
| | ) | |
| Plaintiff, | ) | No. 24-cv-4322 |
| | ) | |
| v. | ) | District Judge Georgia N. Alexakis |
| | ) | Magistrate Judge Keri L. Holleb Hotaling |
| TriState Capital Bank, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant TriState Capital Bank's General Fee Petition [Dkt. 119] ("Fee Petition") and Defendant's Supplement to the General Fee Petition [Dkt. 158] ("Supplement"). Pursuant to the Court's February 4, 2026 Order [Dkt. 115], the petitions were filed to collect "the fees Defendant[ ] incurred [] in connection with attempting to enforce the subpoenas issued to John Thodos and Peggy Thodos."

The long and tortured history of the Defendant's efforts to enforce the subpoenas it issued to John and Peggy Thodos has been thoroughly recounted by both this Court at the April 23, 2026 hearing [transcript at Dkt. 144] and by the District Judge for over seven pages in her September 25, 2026 Order [Dkt. 179 at 1-7].[1] The Court will not set out those facts again here but refers the reader to those documents. Suffice it to say, the subpoena enforcement odyssey that occurred here lasted from the July 25, 2025 issuance of the subpoenas to the April 29, 2026 discharge of the Rules to Show Cause related to enforcement of those subpoenas. The Court has previously sanctioned the Thodoses' attorney Robert Hanlon $2,200.00 [Dkt. 146] which was deposited with the Court [Dkt. 156] and previously ordered the Thodoses to pay the ESI vendor costs that resulted from their

[1] Defendant also details the Thodoses' discovery deficiencies in detail in its reply brief at Dkt. 172 at pp. 2-7, to which the Court also directs the reader.

failure to comply with the Defendant's subpoenas [Dkt. 120]. But the Court has not yet awarded any attorneys' fees or costs to Defendant for any of its work related to enforcement of its subpoenas. As Defendant aptly put it: "Respondents [both the Thodoses and their attorney Robert Hanlon][2] spent nine months obstructing TriState's discovery efforts in defense of a multimillion-dollar case that the Thodoses originally brought and in which they remain, for all intents and purposes, the real parties in interest as the co-trustee/sole beneficiary of the [Peggy A. Thodos 2014 Irrevocable] Trust (in Peggy) and as co-borrowers on the loan at issue (in John and Peggy)." [Dkt. 172 at 1.] Defendant has petitioned to recover significant fees and costs—approximately $146,000—it alleges were generated due to Respondents' repeated failures to respond to the subpoenas, forcing Defendant to engage in extensive motion practice to enforce those subpoenas.

## ***I. The Court Has The Authority to Award Attorney's Fees***

"A district court may impose sanctions under its inherent authority where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith so long as there has been a finding of bad faith, designed to obstruct the judicial process, *or a violation of a court order*." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (cleaned up) (emphasis added); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (district courts have the inherent power to sanction litigants and their attorneys for "bad-faith conduct or willful disobedience of a court's orders."); FRCP 37. Defendant seeks John Thodos, Peggy Thodos, and their attorney Robert Hanlon be held jointly and severally liable for the Rule 37 sanctions sought here. As the Sixth Circuit recently held, individual attorneys may be found jointly and severally liable with their clients for discovery abuses. *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369 (6th Cir. 2022).

---

[2] Defendant grouped the Thodoses and Hanlon together as "Respondents" in its briefings and the Court has done the same.

Here, the Respondents circumvented or outright violated at least seven Court Orders, including the (i) the subpoenas; (ii) the November 25, 2025 Order that required production by December 5, 2025 [Dkt. 76]; (iii) the December 8, 2025 Order that enforced the Court's November 25, 2025 Order [Dkt. 79]; (iv) the December 23, 2025 Order that required further production by January 9, 2026 [Dkt. 88]; (v) the February 4, 2026 Order that set a process for proposing a third-party vendor [Dkt. 115]; (vi) the ESI Order's directive that the Thodoses provide Repario with access to various data sources within 14 days [Dkt. 121]; and (vii) the ESI Order's requirement that the iCloud accounts were to be collected [Dkt. 133]. Respondents cannot dispute the existence of these Orders, the fact they violated or circumvented them, and the fact they often complied only after further Court intervention. Respondents conduct falls far below the standards expected of litigants and counsel in federal court and Respondents must now bear the consequences of their afront to the Court's authority. Sanctions for this behavior are clearly appropriate.

## ***II. Respondents' Noncompliance With TriState's Subpoenas Was Not Substantially Justified***

For Respondents to demonstrate their position was "substantially justified" such that fees need not be awarded despite losing on a motion to compel, "a party must show there was a genuine dispute and its opposition had a reasonable basis in law and fact." *Pable v. Chicago Transit Auth.*, 145 F.4th 712, 724 (7th Cir. 2025). Respondents' months' long failure to comply with basic discovery obligations had neither. Respondents cite no authority holding that one's age or lack of technical expertise excuse discovery misconduct (nor could it ever excuse counsel's noncompliance with his own obligation to guide the Thodoses through the discovery process).[3]

---

[3] See, for example, Rule 1.1: Competence, of the Under the American Bar Association Model Rules of Professional Conduct, where although a lawyer is not strictly prohibited from handling a matter in an unfamiliar area of law, counsel must satisfy the competency requirement by bringing themselves up to speed by dedicating the necessary time and effort to learn the law and procedures (*e.g.*, including any technical proficiency requirements needed to produce documents expeditiously and in a particular document format, if unknown) relevant to the case. Specifically, "[a] lawyer shall provide competent representation to a client. Competent representation requires the…thoroughness and preparation reasonably necessary for the representation.") (available at https://www.americanbar.org/groups/

Moreover, the Thodoses *still* contend that they "made good faith efforts to comply with their discovery obligations" and "[t]he primary deficiency in the Thodoses' productions related to ESI load files, a technical formatting requirement." [Dkt. 168-1 at 5.] This is simply not true. Rather, the Thodoses failed to produce at least seven categories of documents at the outset, and even more once TriState learned of other sources of responsive material. Most tellingly, the Thodoses originally produced 4,000 documents to the Defendant, only to have the Court-appointed ESI vendor identify over 85,000 responsive documents from the Thodoses electronic sources. This is not being technically deficient in their production, but rather woefully non-compliant with the subpoenas.

Equally important, *both subpoenas themselves specified the form in which the documents and ESI were to be produced*. None of the Respondents can legitimately believe that "the subpoena did not command an EIS [*sic*] protocol," or that the request for ESI load files was "a technical requirement developed post subpoena." [Dkt. 168-1 at 2, 3, 5.] It is similarly unbelievable that Respondents are now suggesting that the specified document format obligated the Thodoses to create records, as they now suggest. [*Id*. at 3.]

Respondents have not shown that their nine months of noncompliance was substantially justified in that it had a reasonable basis in law and fact. *Pable*, 145 F.4th at 724.

## ***III. Costs and Fees Awarded Here***

Here, TriState has submitted evidence of the actual rate it paid its counsel to litigate the subpoena compliance on its behalf. [Dkt. 119-1 at ¶ 9.] Courts have treated rates "actually invoiced" as presumptively reasonable, particularly where (as here) those rates are "below the standard…billing rates charged" by counsel. *Upaid Sys., Ltd. v. Card Concepts, Inc.*, Case No. 17-cv-8150, 2025 WL 4071203, at *2 (N.D. Ill. Mar. 24, 2025). An "attorney's actual billing rate for

professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_1_competence/) (last accessed November 3, 2026).

comparable work is "presumptively appropriate" to use as the market rate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). "If the fee applicant establishes his or her market rate, the burden is upon the opposing party to present evidence establishing a good reason why a lower rate is essential." *Holmes v. Inmar Brand Sols., Inc.*, No. 21-2093, 2024 WL 6985505, at *5 (C.D. Ill. Nov. 14, 2024) (cleaned up) (citing *People Who Care*, 90 F.3d at 1313).

However, at the same time, the Supreme Court has emphasized that "the district court has discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). This is so because the district court has a "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id*. The district court is afforded significant deference in fee matters because the desirability of avoiding a second major litigation over attorneys' fees outweighs the need for uniformity in attorneys' fee awards. *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995) (citing *Hensley*, 461 U.S. at 437). But the record should still assure a reviewing court "that the district court did not 'eyeball' the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court." *Spellan*, 59 F.3d at 647 (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986)) (signals omitted).

Here, the Court has completed a line-by-line analysis of the bills provided *in camera* in support of Defendant's fee petitions. While the work was clearly legitimate legal work necessary for the defense of the case, the Court finds that some of the work (*e.g.*, document review of Respondents' productions; drafting of joint status reports) covers tasks that would have been necessary regardless of Respondents' stonewalling response to the subpoenas. Similarly, the Court finds some tasks prudent as part of good legal practice, such as conferral with co-counsel when drafting briefs or status reports, having multiple attorneys provide input/revisions to a draft, or

having more than one attorney present at a hearing, but the Court will not pass along all of these costs to Respondents. Additionally, there were some tasks on which the Court finds defense counsel spent excessive time and adjusted the reimbursable time accordingly. Finally, because defense counsel engages in block billing rather than task-based billing, the Court did its best to guesstimate the number of reimbursable hours for the tasks it determined were reimbursable from a given block of time (particularly in instances where nearly the entire entry has been redacted yet the billed time for the whole block remains intact, see, *e.g.*, the entry for 10/3/2025; the entries for 1/27/2026).[4]

As to the costs incurred, there were several costs the court disallowed, such as meals, even if they were incurred when TriState's counsel was required to appear in person in Chicago. The Court also disallowed all the "miscellaneous" charges, all "parking" charges, and all "out of town transportation expenses" as these were not adequately explained on the bill. Likewise, if there was a second "hotel" charge for a given date, the Court disallowed the lesser charge because it, too, lacked adequate explanation for the Court's purposes in the instant exercise. As per the Court's explanation above that although it may have been prudent legal practice to have more than one TriState attorney attend Court hearings, the Court has not passed along the flight/hotel costs for attorney Gretchen Jankowski where they appear in tandem for any hearing in which attorney Matthew Pilsner has also submitted flight/hotel costs. In practice, this results in the only allowable costs being for attorney Matthew Pilsner's billed airfare and hotel, as well as the firm's transcript costs.

While the Court will not do an item-by-item breakdown of the fees for which it is allowing reimbursement, although the above descriptions should suffice to assure a reviewing court this Court did not "eyeball the fee request and cut it down by an arbitrary percentage" *Spellan*, 59 F.3d at 647,

---

[4] Entire entries were redacted for some timekeepers on some dates (*e.g.*, those of attorney Gretchen Jankowski and attorney Matthew Pilsner on 1/28/2026) and the Court disallowed all hours in such instances.

the Court will go one step further and list the timekeepers and their monthly hours the Court is allowing as reimbursable, followed by a list of the reimbursable costs. As a refresher, the total amounts sought by Defendant were $141,376 in fees and $4,992.41 in costs. The Court has allowed recovery of $87,826.00 in fees, and $2,775.97 in costs, as detailed below. The Court finds this amount reasonable considering the factual backdrop of the dilatory conduct of the Respondents in responding to the subpoenas in this case. *Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 539 (7th Cir. 2017) (holding that "sanctions must be reasonable" and finding a $2,156 sanction reasonable for a single-day delay in responding to discovery in light of prior dilatory conduct).

| **October 2025** | **Reimbursable Hours** |
|---|---|
| M. Pilsner | 0.5 |
| G Jankowski | 0.0 |
| J. E. Lewis | 0.0 |
| J. Simco | 0.0 |

| **November 2025** | **Reimbursable Hours** |
|---|---|
| M. Pilsner | 7.1 |
| G Jankowski | 1.3 |
| J. E. Lewis | 15.5 |
| J. Simco | 3.9 |

| **December 2025** | **Reimbursable Hours** |
|---|---|
| M. Pilsner | 19.9 |
| G Jankowski | 1.5 |
| J. E. Lewis | 0.0 |
| J. Simco | .5 |

| **January 2026** | **Reimbursable Hours** |
|---|---|
| M. Pilsner | 8.1 |
| G Jankowski | 5.9 |
| J. E. Lewis | 1.8 |
| J. Simco | 6.2 |

| February 2026 | Reimbursable Hours |
|---|---|
| M. Pilsner | 2.0 |
| G Jankowski | 1.1 |
| J. E. Lewis | 16.7 |
| J. Simco | 7.1 |

| March 2026[5] | Reimbursable Hours |
|---|---|
| M. Pilsner | 18.7 |
| G Jankowski | 2.4 |
| J. E. Lewis | 0.3 |
| J. Simco | 10.0 |

| April 2026 | Reimbursable Hours |
|---|---|
| M. Pilsner | 8.6 |
| G Jankowski | 1.6 |
| J. E. Lewis | 1.4 |
| J. Simco | 1.3 |

| April 2026 | Reimbursable Hours |
|---|---|
| M. Pilsner | 8.6 |
| G Jankowski | 0.0 |
| J. E. Lewis | 0.5 |
| J. Simco | 2.3 |

| | TOTAL Reimbursable Hours | Billed Rate[6] | Fees Allowed |
|---|---|---|---|
| M. Pilsner | 73.5 | $695.00/hour | $51,082.50 |
| G Jankowski | 13.8 | $695.00/hour | $9,591.00 |
| J. E. Lewis | 36.2 | $495.00/hour | $17,919.00 |
| J. Simco | 31.3 | $295.00/hour | $9,233.50 |
| | | | **TOTAL FEES:** **$87,826.00** |

5 The Court looked at the March 2026 invoice in two parts (the earlier March dates were included in the original fee petition and the later March dates were included in the supplemental fee petition) but has treated the March 2026 invoice as a whole herein.

6 See Dkt. 119-1 at ¶ 9 (Declaration of G. Jankowski) for the hourly rates of the timekeepers at defense counsel's office.

**COSTS:**

| Billed Date | Description | Amount |
|---|---|---|
| 11/12/25 | Travel Expense – Airfare Matthew C. Pilsner TriState Capital/Thodos - Hearing | $729.12 |
| 11/12/25 | Travel Expense – Hotel Matthew C. Pilsner TriState Capital/Thodos - Hearing | $263.47 |
| 12/16/25 | Travel Expense – Hotel Matthew C. Pilsner Hearing | $177.65 |
| 1/20/26 | Travel Expense – Airfare Matthew C. Pilsner Hearing | $531.99 |
| 2/3/26 | Travel Expense – Hotel Matthew C. Pilsner Hearing | $224.66 |
| 3/1/26 | Transcript of proceedings held before Judge Holleb Hotaling on 2/26/26 | $226.96 |
| 3/27/26 | Transcript of proceedings held before Judge Holleb Hotaling on March 24, 2026 | $330.12 |
| 4/23/26 | Transcript of Hearing before The Honorable Keri Holleb Hotaling [presumably for the same date, *see* Dkt. 144] | $292.00 |
| | | **TOTAL COSTS:** **$2,775.97** |

In sum, Defendant TriState Capital Bank's General Fee Petition [Dkt. 119] and Defendant's Supplement to the General Fee Petition [Dkt. 158] are GRANTED IN PART, as discussed above. Respondents John Thodos, Peggy Thodos, and their attorney Robert Hanlon are hereby jointly and severally sanctioned in the total amount of **$90,601.97** ($87,826.00 in fees and $2,775.97 in costs) related to the extraordinary efforts Defendant incurred attempting to enforce the subpoenas issued to John Thodos and Peggy Thodos. Respondents may choose to distribute this amount amongst themselves however they wish, but the full amount shall be paid to defense counsel by **12/4/2026**. As all matters relating to the referral of this case are now resolved, the referral is closed and the case is returned to the assigned district judge. Judge Holleb Hotaling no longer referred to this case.

**ENTERED: November 16, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge